IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BUILDERS TRUST OF NEW MEXICO,
an unincorporated association,

      Plaintiff,

v.                                     CIV 09-0249 RB/GBW

THE RESOLUTION ASSURANCE GROUP,
INC., an Illinois Corporation, and JOHN
HOCHBAUM, JR., an individual,

      Defendants.

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION ON DISPOSITION OF MOTION FOR DEFAULT JUDGMENT

      This matter is before this Court on Plaintiff's Motion for Default Judgment.  *Doc. 7.* This matter has been referred to me to conduct hearings and to perform any legal analysis required to recommend to the Court a disposition of this motion.  *Doc. 11.*  For the reasons described herein, I recommend the motion be granted.

## BACKGROUND

      This is an unfair competition action brought by Builders Trust of New Mexico pursuant to the Lanham Trademark Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(d).  *See Doc. 1* at 12-17.  Plaintiff additionally alleges unfair trade practices and trademark infringement

in violation of the New Mexico Unfair Practices Act, N.M.S.A. 1978 § 57-12-1 *et. seq* and state common law. *Id.* On March 13, 2009, Plaintiff filed a complaint alleging that The Resolution Assurance Group, Inc., (RAG) and John Hochbaum Jr., maintained an unauthorized and infringing use of Builders Trust service marks, trade names, and registered domain name. *Id.* at 1. RAG is an Illinois corporation with its principal place of business in Chicago, Illinois, and Hochbaum is the President and Chief Executive Officer of RAG. *Id.* at 2. Claiming that Defendants acted willfully, Builders Trust seeks injunctive relief, statutory damages, attorneys' fees and costs. *Id.* at 11.

The summons and copies of the complaint were served on Defendants on April 10, 2009. *Docs. 4 & 6.* On May 20, 2009, Plaintiff filed a Praecipe with the Court containing an affidavit by Randy Akin asserting that, to the best of his knowledge, John Hochbaum is not on active duty in the military nor an infant or incompetent person.[1] *Doc. 9.* The Praecipe also included an affidavit by Jeffrey H. Albright asserting that Mr. Hochbaum was served in person on April 10, 2009. *Id.* The affidavit additionally stated that service to the registered agent of record for RAG, Dennis Guth, was attempted on April 2, 2009, but not completed because Mr. Guth is deceased. *Id.* Pursuant to Illinois law, proper service was

---

[1] Parties seeking default judgment must satisfy the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A. App. § 501 et. seq. The plaintiff must either set forth facts showing that the defaulting defendant is not in the military or provide an affidavit attesting to that fact. *See* 50 U.S.C.A.App. § 501. Additionally, pursuant to FED. R. CIV. P. 55(b), parties must provide evidence that the defaulting defendant is not a minor or incompetent person. Thus, Plaintiff has satisfied these requirements through Mr. Akin's affidavit.

then made to the Illinois Secretary of State on April 10, 2009.  *Id.*  None of the Defendants appeared, answered, or otherwise filed any pleadings within the time prescribed by FED. R. CIV. P. 12(a)(1).  Consequently, an entry of default was entered by the Clerk on May 21, 2009.  *Doc. 10*; see FED. R. CIV. P. 55(a).

On June 23, 2009, this Court issued an order instructing Defendants to show cause why they had failed to answer the Complaint or file any pleadings in the case.[2]  *Doc. 12.* Defendants failed to respond the court order within the prescribed time period.  On September 24, 2009, this Court issued an order for additional briefing by Plaintiff regarding personal jurisdiction in this case.  *Doc. 22.*  Plaintiff submitted its additional briefing on October 23, 2009.  *Doc. 24.*  On November 17, 2009, the Court requested additional briefing regarding relief sought in the case.  *Doc. 25.*  Plaintiff filed its additional briefing on January 19, 2010.  *Doc. 31.*  Then, on March 10, 2010, an evidentiary hearing was held regarding Plaintiff's Motion for Default.  No Defendant appeared at the hearing.[3]

## I.      Default Judgment Generally

In the instant case, Plaintiff seeks injunctive relief and monetary relief which is not a sum certain.  Therefore, after the entry of default is made by the clerk pursuant to Federal

---

[2] Copies of this order were sent via certified mail to nine different individuals/entities affiliated with the name "Resolution Assurance Group."  *See Docs. 13-21.*

[3] Copies of the order setting the evidentiary hearing were sent via certified mail to nine different individuals/entities affiliated with the name "Resolution Assurance Group."  *See Docs. 32-44.*

Rule 55(a), the court must decide whether to enter a default judgment. FED. R. CIV. P. 55(b). "Decisions to enter a judgment by default are committed to the district court's sound discretion . . . ." *Dennis Garberg & Assocs., Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) (*citing Ruplinger v. Rains* (*In re Rains*), 946 F.2d 731, 732 (10th Cir. 1991)). Default judgments are a harsh sanction. *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987). "Strong policies favor resolution of disputes on their merits: The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Rains*, 946 F.2d at 732 (*quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.3d 689, 691 (D.C. Cir. 1970)). Nonetheless, in cases involving unresponsive parties, "the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *Id.* at 733 (*quoting H.F. Livermore Corp.*, 432 F.3d at 691)).

In this case, the adversary process has indeed been halted by the nonresponsive Defendants. The complaint was filed a year ago and, despite repeated attempts by both the Court and the Plaintiff, no Defendant has appeared, answered, or filed any pleading whatsoever. Builders Trust of New Mexico has been diligent and it must be protected by the default judgment remedy. Therefore, I conclude that, as a general matter, entry of a default judgment in this case is appropriate.

II.      Personal Jurisdiction

Despite the general appropriateness of a default judgment in this case, the Court must still analyze the issue of personal jurisdiction.  While personal jurisdiction is a defense that is deemed waived by a party if not appropriately raised, FED. R. CIV. P. 12(h)(1), "[d]efects in personal jurisdiction . . . are not waived by default when a party fails to appear or respond," because "[a] judgment is void when a court enters it lacking . . . jurisdiction over the parties." *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) (*citing V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224-25 (10th Cir. 1979)).  Accordingly, "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case." *Dennis Garberg*, 115 F.3d at 772; *Williams*, 802 F.2d at 1203 (before entering default judgment, a district court has an affirmative duty to verify that jurisdiction exists).

Here, Plaintiff brings its cause of action under the Lanham Act, so the Court is faced with a federal question case.  "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (internal quotations and citations omitted).  Because the Lanham Act does not authorize nationwide service of process,

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004), the Court must decide whether Defendant is amenable to service of process in New Mexico. *See Dudnikov v. Chalk & Vermilion Fine Arts,. Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (reasoning that where the federal statute under which plaintiff sued did not provide for nationwide service of process, "FED. R. CIV. P. 4(k)(1)(A) commands the district court . . . to apply the law of the state in which the district court sits"). New Mexico's long arm statute is coextensive with constitutional limitations imposed by the Due Process Clause. *See Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002). Thus, if jurisdiction is consistent with the Due Process Clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).

Turning to the constitutional inquiry, "to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two ways in which a court can find that a defendant has the required minimum contacts sufficient to establish jurisdiction over him. First, "if a defendant has 'continuous and systematic general business contacts' with the forum state, it may be subjected to the general jurisdiction of the forum state's courts." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007) (*quoting Helicopteros Nacionales de Colombia v. Hall*, 466 U.S.

6

408, 414-16 (1984)).  However, if a defendant's contacts with the forum state are not of the continuous and systematic nature required to subject it to general jurisdiction, "a state's courts may exercise specific jurisdiction over a defendant that 'purposefully directed' its activities at the state's residents, if the cause of action arises out of those activities." *Id.* (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).

In this case, Plaintiff contends that the Court has jurisdiction over Defendants because they maintain an internet website that targets New Mexico residents and allows for the initiation of business relationships with New Mexico residents.  *Doc. 24* at 6-7.  The seminal authority for determining whether an internet website standing alone may establish personal jurisdiction is *Zippo Mfr'g Co. v. Zippo Dot com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).[4]  *Zippo* involved a series of trademark claims brought by Zippo Manufacturing  in Pennsylvania against Zippo Dot Com, a California corporation that ran an Internet news website.  There, the defendant's contacts with the forum state "occurred almost exclusively over the Internet."  Specifically, the defendant did not have offices, employees, or agents in the forum; it advertised there only through its website and only

---

[4] *See Toys "R" Us, Inc., v. Step Two, S.A.*, 318 F.3D 446, 452 (3d Cir. 2003) (stating that *Zippo* "has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713-14 (4th Cir. 2002) (adopting the *Zippo* model)*; Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (using *Zippo's* "sliding-scale" analysis to determine personal jurisdiction); *Cybersell, Inc., v.  Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir. 1997) (using the *Zippo* model); *Gather, Inc. v. Gatheroo, LLC*, 443 F. Supp. 2d 108, 115 (D.Mass. 2006) (referring to *Zippo* as "the leading case relating to personal jurisdiction in a trade-mark infringement case involving an Internet company . . . ."); *Sublett v. Wallin*, 136 N.M. 102, 108-10 (N.M Ct. App. 2004) (adopting the *Zippo* analysis for New Mexico state cases)*.*

two percent of its news service subscribers lived there. *Zippo*, 952 F.Supp. at 1121. The court reasoned that the constitutionality of an exercise of personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. The court set forth a "sliding scale" analysis for Internet-based personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (citations omitted).

Since *Zippo*, courts have incorporated various additional factors for internet contacts that focus on the Supreme Court's "purposeful availment" requirement for personal jurisdiction. For example, in *ALS Scan*, the Fourth Circuit expressly incorporated an "intentionality" requirement, stating

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within

8

the State, a potential cause of action cognizable in the State's courts.

293 F.3d at 714.  Similarly, in *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), the Sixth Circuit held that the purposeful availment requirement is satisfied "if the web site is interactive to a degree that reveals specifically intended interaction with residents of the state."  *Id.* at 890.  In *Toys "R" Us, Inc.*, the Third Circuit concluded that

> the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

318 F.3d at 454.

Here, Plaintiff classifies RAG's website as an interactive website falling within the middle ground of the sliding scale analysis.  *Doc. 24* at 7.  Plaintiff further contends that the level of interactivity conferred by the website is enough to confer jurisdiction over Defendants.  This Court agrees.

First, when individuals go to RAG's site, they are able to fill out forms on the website in order to receive estimates directly from RAG.  *Doc. 24*, Ex. 1.  These forms request contact information including a name, address, phone number, and e-mail address. *Id.*  The website also asks users to provide a description of their construction project.  *Id.* Moreover, the on-line forms contain drop-down menus allowing users to specify their location.  *Doc. 24*, Exs. 2 & 3.  The drop-down list includes New Mexico.  *Id.*  Once potential

clients fill out the form, they are promised an estimate and can be matched with a member contractor.  *Doc. 24* at 8.  In addition to these capabilities, the website also allows potential customers to sign up for a newsletter, and solicits contractors to become members which entitles them to be matched with customers who fill out the forms requesting estimates.  *See id.*, Exs. 1-3.

RAG's website, therefore, is an interactive one "where a user can exchange information with the host computer."  *Zippo*, 952 F.Supp. at 1124.  The fact that a potential client can exchange project information and receive bids directly from RAG permits significant commercial activity through the website.  Under the analysis described in *Zippo*, this website is sufficiently interactive to support personal jurisdiction in New Mexico over RAG.  Moreover, the inclusion of the dropdown menu with New Mexico as an option for the potential customer's or building contractor's location is evidence that RAG purposefully directs its website to New Mexican residents.  *See ALS Scan,* 293 F.3d at 714; *see also Toys "R" Us, Inc.*, 318 F.3d at 454.  Accordingly, I conclude that this Court has personal jurisdiction over Defendants.

III.     Remedies:

As a result of their default, Defendants admit the Plaintiff's well-pleaded allegations of fact.  *See  Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003)*; see also S.E.C. v. Wright*, 261 Fed. Appx. 259, 261 (11th Cir. 2008).  Accordingly, Defendants concede that

they willfully violated Builder's Trust federally-registered trademarks and they are liable for federal trademark infringement in violation of 15 U.S.C. § 1114 (Count I), federal unfair competition in violation of 15 U.S.C. § 1125(a) (Count II), federal cybersquatting in violation of 15 U.S.C. § 1125(d) (Counts III and IV), unfair competition in violation of the New Mexico Unfair Practices Act (Count V), and New Mexico common law trademark infringement (Count VI).

A.    *Statutory Damages*

(1) 15 U.S.C. § 1117(c)

Under 15 U.S.C. § 1117(c), a plaintiff may elect to recover an award of statutory damages for actions involving the use of a counterfeit mark at any time before final judgment is entered.  A plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990).  In the instant case, Plaintiff has elected to seek statutory damages per counterfeit mark pursuant to 15 U.S.C. §§ 1117(c) rather than pursuing actual damages.  *Doc. 31* at 6.

In its discretion, a court can award not less than $1,000 but not more than $200,000 per counterfeit mark per type of good sold for non-willful violations, and up to $2,000,000 per counterfeit mark per type of good for willful trademark infringement.  15 U.S.C. § 1117(c).  Plaintiff has alleged, and Defendants through their default have admitted, that the

11

Defendants wilfully used four counterfeit marks in connection with at least one service sold. *See Doc. 1, Exs. 1, 3-5* (setting forth USPTO Certificates of Registration of the marks "builderstrust.com," "Builders Trust of New Mexico," Builders Trust of New Mexico / Affiliated with New Mexico Home Builders Association," and Builders Trust of New Mexico / Affiliated with New Mexico Home Builders Association / Workers Compensation Excellence since 1997").  Accordingly, the maximum available statutory damages under 15 U.S.C. § 1117(c) would be $8,000,000.

(2) 15 U.S.C. § 1117(d)

Having established liability for federal cyberpiracy pursuant to 15 U.S.C. § 1125(d)(1), Plaintiff also seeks statutory damages under 15 U.S.C. § 1117(d).  Section 1117(d) states that in a case involving a violation of section 1125(d)(1) "a plaintiff may elect . . . to recover, instead of actual damages and profits an award of statutory damages in the amount of $1,000 and not more than $100,000 per domain name."  Here, Defendants used two infringing domain names: http://www.builderstrust.biz and http://www.builderstrust.org. *See Doc. 24, Ex. 1* (containing a true and correct copy of an image of the Defendants' website at http://www.builderstrust.biz/underwriter.htm); *see Id., Exs. 2-3* (containing true and correct copies of images from Defendants' website at http://www.builderstrust.org). Thus, the maximum statutory damages available under subsection 1117(d) would be $200,000.

12

(3) Recommendation

Thus, the aggregate statutory amount this Court could award in this case is $8,200,000.[5] Plaintiff asserts that $150,000 is an appropriate award in light of the statutory law and Defendants' actions. *Doc. 31* at 6. Plaintiff contends that this amount takes into account circumstances of this case, and states it would be proportionate to the damage suffered because of Defendants' infringing activity.

Statutory damages are appropriate in cases when the information needed to prove actual damages is within the infringer's control and is not disclosed. *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D.Ohio 2007). "Several courts have found statutory damages especially appropriate in default judgment cases due to infringer nondisclosure." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1220 (S.D. Fla. 2004). The court is given broad discretion to determine the amount of statutory damages to be awarded. *See generally Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (referring to the 1976 Copyright Act, 17 U.S.C. § 504(c)(1)). In considering a just award, the Court notes the fact that Defendants have failed to participate at all in this case. As a result, Plaintiff has been unable to gather any evidence regarding the breadth of Defendants' operation or its profits. Additionally, court finds it appropriate to award an

---

[5] Actually, pursuant to the New Mexico Unfair Practices Act, Plaintiff could also be awarded up to an additional $300.00 in statutory damages. *See* N.M.S.A. 1978 § 57-12-10(B).

amount of statutory damages that will deter Defendants, as well as others, from participating in similar conduct. *See Relios, Inc. v. Genesis, Inc.,* No. CIV-08-345, *Doc. 20* at 4-5 (D.N.M Oct. 9, 2008) (holding that the defendant's unwillingness to cooperate prior to and during the suit was relevant in imposing severe money sanctions under copyright laws). Moreover, Plaintiff's request of $150,000 is proportionate to the type and quantity of commercial activity involved in this case. Finally, the infringing use occurred on the internet where it could reach many people and Defendants failed to stop their infringement despite Plaintiff's requests. *See e.g. PetMed,* 336 F. Supp.2d at 1220. The Court notes that such an award would be less than 2 percent of the maximum permitted under the statute. Accordingly, I recommend that Plaintiff be awarded $150,000 as a just and reasonable award of statutory damages.

### B.    Attorneys' Fees and Costs

Under the Lanham Act, a court is allowed to award attorney fees and costs if the defendant's actions make the case an "exceptional case of infringement." 15 U.S.C. § 1117(a). An "exceptional case" is generally accepted to mean cases in which trademark infringement is "malicious, fraudulent, deliberate, or willful." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1232 (10th Cir. 2000); *see also VIP Foods, Inc. v. Vulcan Pet, Inc.,* 675 F.2d 1106, 1107 (10th Cir. 1982). Additionally, the New Mexico Unfair Practices Act specifies that a court shall award attorneys fees to a prevailing party

complaining of an unfair or deceptive trade practice or unconscionable trade practice.

N.M.S.A. 1978 § 57-12-10(C).

In its Complaint, Plaintiff alleges that Defendants' use of the Builder's Trust mark

was willful.  *Doc. 1* at 11.  As discussed above, a default requires that the factual allegations

in the complaint be accepted as true and Plaintiff has plead the necessary facts for willful

infringement.  Therefore, Defendants' violations are deemed willful and thus constitute

exceptional circumstances.  Furthermore, since Defendants have failed to participate, plead,

or comply with the orders of this court, an award of reasonable attorney's fees is

appropriate.

Plaintiff seeks attorney fees and costs in the amount of $44,063.16.[6]  *Doc. 52.*  This

amount represents actual fees, calculated at the standard rates actually billed to plaintiffs,

based on the number of hours actually worked, along with necessary costs which were

incurred in the case.  *See Doc. 31, 52.*  Plaintiff has provided an affidavit and business

records verifying this amount.  *Id.*  Having reviewed Plaintiff's submissions and analyzed

the requested amount pursuant to *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249

(10th Cir. 1998), I conclude that $44,063.16 is a reasonable figure.  Thus, I recommend that

---

[6] In Plaintiff's original request for attorney fees, it requested $39,744.85 which had, at that time, been expended plus $14,000 which was an estimate of future costs of final resolution including domesticating the judgment.  *Doc. 31.*  I do not recommend any award of attorney fees based on this speculative estimate.

Plaintiff be awarded $44,063.16 in attorney fees and costs.

C.    *Post-Judgment Interest*

Plaintiff requests post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury Yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* Therefore, I recommend Plaintiff be awarded post-judgment interest on the statutory damages and costs and fees awarded, from the date an entry of judgment is made until paid according to the present statutory rate.

D.    *Injunctive Relief*

"[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). Consequently, even if Plaintiff is entitled to a default judgment, it bears the burden of establishing entitlement to injunctive relief. "For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d

818, 822 (10th Cir. 2007).  As this Court has previously noted, Plaintiff has already

shown actual success of the merits as a result of Defendants' default.  *See Doc. 25* at 3-4.

Thus, the Court considers the three remaining factors below.

      1.  Irreparable Harm:

      Plaintiff argues that since its trademarks were wrongfully appropriated, it has

presumptively suffered irreparable harm.  *Doc 31* at 2-3.  Traditionally, irreparable harm

has been presumed if a likelihood of success on the merits in a trademark infringement

action is proven.[7]  However, this presumption has been called into question by the

Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94

(2006).  In *eBay*, the Court reversed the Federal Circuit for applying a categorical rule to

permanent injunctions in a Patent Act case.  547 U.S. at 393-94.  The Court stressed that

the Patent Act indicates "that injunctive relief 'may' issue only 'in accordance with the

principles of equity.'"  *Id.* at 393.  Because the Court concluded "that neither court

below correctly applied the traditional four-factor framework that governs the award of

injunctive relief, [it] vacated the judgment of the Court of Appeals, so that the District

Court may apply that framework in the first instance."  *Id.* at 394.  The Supreme Court

---

[7] *See Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3rd Cir. 2000); *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993); *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100-01 (10th Cir. 1991), overruled on other grounds by *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (*en banc*); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir. 1989); *Amoco Oil Co. v. Rainbow Snow, Inc.*, 809 F.2d 656, 664 (10th Cir. 1987).

held that while "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.*

It is not clear whether this holding extends to other traditional areas of intellectual property, like trademark and copyright infringement cases. Presently, the Fourth Circuit is the only circuit that has affirmatively applied *eBay* to copyright infringement cases where injunctive relief is sought. *See Christopher Phelps & Associates LLC v. Galloway*, 492 F.3d 532 (4th Cir. 2007). In *Galloway*, the Fourth Circuit held that a copyright plaintiff is not automatically entitled to injunctive relief merely by a showing of infringement and the threat of continuing infringement. *Id.* at 544.

Additionally, the Fifth Circuit discussed *eBay* when it upheld a lower court's grant of preliminary injunction to a plaintiff in a trademark infringement case. *Paulsson Geophysical Services Inc. v. Axel M. Sigmar*, 529 F.3d 303, 312-13 (5th Cir. 2008). Commenting that the question of whether a court may still presume irreparable injury upon finding a likelihood of confusion was "difficult" in light of *eBay*, the court declined to answer the question because the plaintiff had affirmatively proven irreparable harm. *Id.*

Similarly, the Eleventh Circuit reversed a preliminary injunction finding on

18

trademark infringement and false advertisement claims involving the defendant's use of plaintiff's marks as search terms in metadata.  *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008).  There, the lower court's decision depended entirely on the presumption of irreparable harm.  *Id.* at 1226.  The Eleventh Circuit commented that *eBay* "calls into question whether courts may presume irreparable harm merely because a plaintiff in an intellectual property case has demonstrated a likelihood of success on the merits."  *Id.* at 1227.  The court noted that a "strong" case could be made that *eBay* necessarily extends to trademark infringement actions, observing that the Lanham Act contained similar language as the Patent Act in terms of the court's equitable powers to grant injunctions.  *Id.* at 1228.  However, the court ultimately remanded the case to the lower court to decide whether a Lanham Act presumption of irreparable harm is categorically rejected by *eBay*.

The Tenth Circuit has twice addressed the *eBay* decision.  In *Lorillard Tobacco Co. v. Engida*, 213 F. App'x 654 (10th Cir. 2007), the court noted the argument by the opposing party that *eBay* overrules a presumption of irreparable harm in intellectual property actions.  *Id.* at 657.  However, the court declined to consider how *eBay* might apply with regard to findings of irreparable harm in trademark infringement cases since other elements of the injunctive relief test were not met.  *Id.*

Then in *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009), the Tenth

Circuit recognized that the Supreme Court had rejected the application of categorical rules in injunction cases.  However, the court went on to say: "We need not decide whether it would be appropriate to assume the existence of irreparable harm because we are dealing with interests in real property; rather, as we explain below, RoDa has made such a showing, establishing its entitlement to injunctive relief."  *Id.* at 1210.

This Court reads the *eBay* decision to eliminate the presumption of irreparable harm when likelihood of success on the merits has been proven.  In analyzing whether Plaintiff has proven "irreparable harm," I have reviewed the pleadings and have relied upon the Proposed Findings of Fact attached as Exhibit 1.

Those facts demonstrate that Defendants have wilfully infringed on Plaintiff's marks in such a way as to create a substantial likelihood of confusion.  This likelihood of confusion has the significant potential to damage Plaintiff's goodwill.  The Tenth Circuit has recognized that goodwill is a "valuable commodity," and that "incalculable damage to that goodwill can constitute irreparable harm."  *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1192 (10th Cir. 2009).  In this case, as long as RAG uses "Builders Trust," Plaintiff must bear the risk that RAG will gain a poor reputation or will otherwise have harmful or negative dealings, knowledge of which will spread in a manner that tarnishes the reputation of the rightful owner of the "Builders Trust" Marks.  Therefore, I recommend finding that Plaintiff has proven that it would suffer

irreparable harm should an injunction not issue.

### 2.  Balance of the Harms:

Plaintiff concedes that it is impossible to surmise the extent of any injury that Defendants would suffer if an injunction were issued since they have refused to participate in this lawsuit. *Doc. 31* at 4.  However, Plaintiff maintains that any damage suffered would be minimal or non-existent since Defendants do not have a protectable interest in continuing to engage in infringing activity. *Id.* Plaintiff further argues that it will suffer great harm if the injunction is not issued because Defendants will be free to continue or return to their infringing activity which would damage Plaintiff's goodwill and force them to resort to costly litigation. *Id.* at 5.

The Court agrees that the balance of the hardships weighs heavily in Plaintiff's favor.  As will be discussed further below, I am recommending a much more limited injunction than that requested by Plaintiff.  Specifically, the recommended injunction would prohibit Defendants' use of the mark "Builders Trust" in their website address or on their webpage, and would require the removal of the use of the mark in business directories . . . distributed in New Mexico.  Such an injunction should cause little legitimate hardship to Defendants given that they have no right to infringe Plaintiff's mark.  Plaintiff, however, will face continued loss of goodwill and ability to control the trademarks that Builder's Trust itself owns if an injunction does not issue.  Thus, this factor weighs in

Plaintiff's favor.

### 3.  Public Interest:

"Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 197 (3rd Cir. 1990) (citations omitted); 2 McCarthy, § 30:21; *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 2005 WL 3664269 *6 (D.N.M. Oct. 12, 2005).  Additionally, "the public interest lies in the enforcement of the Acts of Congress, especially the prevention of consumer confusion as espoused by the Lanham Act." *Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F.Supp.2d 72, 85 (S.D.N.Y. 2009).  Here, as a result of Defendants' default, Plaintiff has proven that RAG's infringing activity is confusing.  Thus, the public interest is best served by granting Plaintiff its requested injunctive relief.

### 4.  Scope of Injunction

Plaintiff requests a broad and invasive injunction.  *See Doc.* 7 at 2-4; *Doc. 1* at 17-18.  Such a broad injunction, however, is not merited in a case where the personal jurisdiction over Defendants is premised exclusively on the Defendants' website.  In such a circumstance, the injunction should be narrowly focused on the infringing activity which brings Defendants within the authority of the court.  *See N.L.R.B. v. U.S. Postal Service*, 486 F.3d 683, 690 (10th Cir. 2007) (holding that injunctive relief is a

powerful remedy which should be narrowly tailored).  Consequently, I recommend the granting of an injunction as follows: (a) Defendants The Resolution Assurance Group, Inc. and John Hochbaum, Jr. must transfer or assign the "builderstrust.biz" and "builderstrust.org" domain names, or any similar domain name, to Plaintiff Builders Trust of New Mexico; (b)  Defendants The Resolution Assurance Group, Inc. and John Hochbaum, Jr. are prohibited from using the words "builders" and "trust" in any future website address or on any website used for their business; and (c) Defendants The Resolution Assurance Group, Inc. and John Hochbaum, Jr. must request that all references to "Builders Trust," or any colorable imitation thereof, in business directories or lists distributed in New Mexico, including internet search engines, be deleted.

<u>CONCLUSION</u>

Defendants RAG and Hochbaum have been properly served in this case, however they refuse to answer, plead, or comply with any order submitted by this Court. Accordingly, default judgment against them is proper.  Defendants are liable to Plaintiff for federal trademark infringement in violation of 15 U.S.C. §§ 1114, 1125(a), 1125(d), unfair competition in violation of the New Mexico Unfair Practices Act and New Mexico common law trademark infringement.  Thus, I recommend that default judgement be entered against Defendants, Plaintiff's request for a permanent injunction be granted in part, and Plaintiff be awarded statutory damages and attorneys fees and costs.

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1.      Plaintiff's Motion for Default Judgment (*Doc. 7*), be granted and default
        judgment be entered against Defendants in this case;

2.      A permanent injunction be issued ordering: (a) Defendants The Resolution
        Assurance Group, Inc. and John Hochbaum, Jr. must transfer or assign the
        "builderstrust.biz" and "builderstrust.org" domain names, or any similar
        domain name, to Plaintiff Builders Trust of New Mexico; (b) Defendants The
        Resolution Assurance Group, Inc. and John Hochbaum, Jr. are prohibited
        from using the words "builders" and "trust" in any future website address
        or on any website used for their business; and (c) Defendants The Resolution
        Assurance Group, Inc. and John Hochbaum, Jr. must request that all
        references to "Builders Trust," or any colorable imitation thereof, in business
        directories or lists distributed in New Mexico, including internet search
        engines, be deleted.;

3.      Plaintiff be awarded statutory damages in the amount of $150,000.00
        pursuant to 15 U.S.C. §§ 1117(c), 1117(d), and the New Mexico Unfair
        Practices Act;

4.      Plaintiff be awarded attorneys fees and costs in the amount of $44,063.16,

which represents actual fees and costs; and

5.      Plaintiff be awarded post-judgment interest pursuant to 28 U.S.C. § 1961(a).

---

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF

SERVICE of a copy of these Proposed Findings and Recommended Disposition they

may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. §

636(b)(1)(c).  A party must file any objections with the Clerk of the District Court

within the fourteen-day period if that party wants to have appellate review of the

proposed findings and recommended disposition.  If no objections are filed, no

appellate review will be allowed.

---

_____

UNITED STATES MAGISTRATE JUDGE